Case 16-3334 John Doe et al. v. Daniel Cummins et al. Oral argument, 15 minutes per side. Mr. Joshua Engel for the appellants. Good morning, Your Honors. I'd like to request three minutes of rebuttal. Okay. If you may please the court, the primary idea that is contained in the complaint in this case, which was dismissed in the 12B6 standard, is that school disciplinary hearings must be conducted with basic fairness. Due process guarantees a hearing that is meaningful and, I would suggest, is fundamentally fair. These are the teachings of the Goldberg case and the Matthews case which go back to first year of law school for everybody. But your client did have, I mean he had one hearing and it was decided for various reasons to be less than the fairness that he wanted and he got yet another. That's correct, Your Honor. Okay. Both clients, there are two plaintiffs in this case, both of them had hearings that were determined to have not been fair or had some procedural issues in them. And they were sent back for other hearings. Those hearings had what we'd suggest and what the complaint could suggest would be the inevitable result, which is that they were found responsible for violations of the code of conduct. I say that's an inevitable result because, as the complaint alleges, the process at the University of Cincinnati is inherently biased against accused students so that it is practically impossible for a student who is accused of misconduct to escape without being disciplined. Well, you know, the case law, the major problem you have with your complaint is that the case law, I think for all of us who are lawyers, you read about whatever process is being afforded and it seems less than because we are so accustomed to all the procedural safeguards that would be afforded in a trial in a court. But the case law specifically doesn't require that. And so you're sort of left with arguing about what would due process require under these circumstances that did not occur.  I mean, we have never suggested in this case, contrary to what the district court claimed, that a disciplinary hearing at a university, such as the University of Cincinnati, needs to have all of the procedural safeguards of a criminal trial, for example. Or a civil trial. That's right, Your Honor. Or even the Administrative Procedures Act for Ohio or for the federal system. So maybe we should talk about what was missing at the second hearings that you're complaining about specifically. Well, I think there were three things that were missing, Your Honor, that I really should be focused on. The first is that the entire process, we suggest, from the investigation through the hearing process was inherently biased. The second is that my clients were not permitted to effectively cross-examine their accusers. And third, the burden of proof was not placed on the party seeking to discipline the students. Now, there were other issues floating around in this thing. And I think the context of which these specific violations, which I've outlined, just now, Your Honor, is important. Let me give you an example of what I mean. The University of Cincinnati does not give the right to counsel at hearings. And this court has said or suggested that, except in extraordinary cases, there's no right to counsel there. I don't think we need to reach that issue today. But, and this is the key point that we make in our briefs when we say that the violations I've discussed need to be looked at as a whole. When you don't have counsel representing a student, you increase the danger from a due process violation. Because you're asking a 17 or 18-year-old student, or in the case of John Doe II, a third-year law student, to represent himself and recognize how to do a hearing. You're asking someone who has no experience, for example, to impeach witnesses with prior inconsistent statements, which is something that's difficult even for young lawyers to do. Can't the student have an advisor there with whom he consults? And that advisor, whether attorney or other individual, can formulate questions that should be asked in cross-examination. And then the student is not guaranteed that the panel will ask those questions. But you're not guaranteed you can ask every question you might want to ask in any kind of trial. Yes, Your Honor, and I think there's a couple of points in your question which I can address. You know, the first is that, you know, asking a student, saying that a student who's 18 years old can have a lawyer next to them and that lawyer can write the questions, is a substitute for being able to effectively cross-examine someone I think doesn't fit with the reality of the situation. You know, trying to teach even a young lawyer, for example, as I mentioned, to impeach someone with a prior inconsistent statement is a difficult process. To try to do it with a 17-year-old college student and say you have to do it through written questions is very difficult. But to get to the heart of your question, I think what Your Honor may be suggesting is that the process that the University of Cincinnati uses for cross-examination through written questions is an adequate and effective method of cross-examination. And I'd suggest it's not for two reasons. But even before I get to that, there's a low-hanging fruit here that I don't want to miss, which is that in the case of John Doe No. 2, he was not even given that opportunity. At his second hearing, his accuser makes a statement and then leaves before even cross-examination through written questions could be conducted. So clearly, whatever process you think might exist, it didn't exist for John Doe No. 2 at his second hearing. But the heart of your question goes to the idea of cross-examination through written questions. And the question, I think, the answer to that is a solid maybe it's effective and maybe it's not. I'd suggest most experienced trial lawyers would probably say to you that you can't effectively cross-examine someone through written questions. It's very hard to impeach them with a prior inconsistent statement. It's difficult to ask follow-up questions. If you think of how this would work, you submit a written question. The person is then sitting there with their advisor and can take time to formulate an answer. It's very different. It's like this process is it's not formulated on a model that mirrors the adversarial system as we are accustomed to it in courtrooms. The panel functions more as a board of inquiry. And it's just not a, you know, now it's your turn to question the witness. Now it's your turn to question the witness. It's not that kind of process. But that doesn't necessarily mean it doesn't afford due process under these circumstances, does it? Well, there's two ways I'd answer that, Your Honor. The first is that the due process protections that exist in the civil system and in the criminal system didn't just spring out of the earth and are imposed upon parties for arbitrary reason. They're there because we believe that they are valuable in the truth-finding process. So every time that you move away from one of these ideas, one of these protections that are considered sort of a core due process protection, you lose some truth-finding process. Now that doesn't mean that there's not another way to find truth. But if you're going to do a board of inquiry, which you think it might be, you still then have an even stronger obligation, I would suggest, to make sure that your board of inquiry is completely unbiased and completely fair. And the amended complaint sets forth a number of ways of which the University of Cincinnati process is biased against people who are accused of these situations. Let me ask you this, because I don't remember. Are you seeking money damages here as well as, I don't know, reinstatement as a student? There would possibly be a claim for money damages. The number one thing that the students want is to have their records cleared on this. And there might be some 11th Amendment issues with money damages. Because I'm just thinking, you know, you want us to write a rule that would hold the University of Cincinnati and thereby all the universities in the Sixth Circuit to a really high standard when they're dealing with student discipline. And it might get to the point that the University of Cincinnati would say, look, we can't do that. This is not a court of law with all these due process protections. We'll just turn this over to the Cincinnati Police Department and let them deal with it. And then they can have a trial in a courtroom with all these protections. I mean, surely that's not where you would want these students to be. And I don't think that's what could happen if you if you make a barrier so high that the that the universities say, well, we can't deal with this. This is clearly out of the realm of reason. Well, I'd say there's there's two responses. I have to bet your honor. The first response is that there are a number of safe harbors out there that the school could say that are constitutionally adequate processes that have been used for administrative type hearings. And I point your honor to the Ohio Administrative Procedures Act, which has a lot of experience behind arguing the law is against you on this. Is it not? Are you asking for a change in the law? Do you know I acknowledge that I don't think the law is against us at all, your honor. I think the law is in your favor. Could you cite for us a case which says you have to have courtroom type cross examination in this type of disciplinary proceeding? Yes, your honor. I think the Winnick case out of the Second Circuit in the flame case. Both say you have to have cross examination as you would have them in a court with representation by counsel. They do not say that specifically. I think they did. Yeah. And so, you know, I would suggest that those cases say that in certain cases and cases particularly where there's credibility of the witnesses at stake, you have to allow cross examination. Now, I don't think we need to get into the issue to decide this case. There isn't credibility at stake in these kind of sexual assault cases. In these type of sexual assault cases, almost always credibility is going to be at stake. But that is the small number of student disciplinary cases. The flame case, for example, credibility wasn't at stake. But I think that's a large part of your argument is that the bias exists with respect to sexual assault cases. The bias in favor of the complainant. That's correct, your honor. Okay. So in this type of case, I mean, I think you could write a very narrow rule based on flame and Winnick to say that in cases where the stakes are extraordinarily high, and in this case for a student they're extraordinarily high. The stakes are extraordinarily high. I mean, your client who was a law student was not removed from the university. He graduated from law school. He's passed the bar exam. He has employment. Yes, he still has a claim because it is possible that this might in some way be found out and used against him in connection with a prior opportunity. But, I mean, there have been no extraordinary consequences for him. I'm out of time, if I may answer, your honor. Well, if you have anything to say about that, yeah. Yeah. The answer in regards to the law student is, you know, if this case had gone to trial, and I think there's some suggestion that's in the complaint as well, he's lost job opportunities because of this. He can't get a security clearance because of this. He'd have trouble. He wants to work as a prosecutor, would have trouble getting a job as a prosecutor because of background investigation information that would come up because of this. So that would be his. How was it challenging, whether he had a lot of claim or not? Thank you. Okay. All right. Mr. Priestley. Your honors, opposing counsel, may it please the court, my name is Evan Priestley. I represent the Appalachians in this matter, University of Cincinnati, Daniel Cummins, Deborah Merchant, and Deneen Rocco. Where appropriate, I'll refer to Mr. Cummins, Ms. Merchant, and Ms. Rocco collectively as the individual defendants. Because it's a threshold issue, I'd like to address the 11th Amendment issues at play in this case. The 11th Amendment immunity bars all suits, whether for injunctive, declaratory, or monetary relief against a state or its departments. The Supreme Court has acknowledged, pursuant to the Ex Parte Young Doctrine, that the 11th Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law. But a reading of plaintiff's complaint in this matter makes it clear they're not seeking prospective injunctive relief in this matter with regard to a continuing violation of federal law. Rather, plaintiffs are seeking a judgment declaring that the University of Cincinnati violated federal law in the past. That is something that the Supreme Court has expressly said is in violation of the 11th Amendment, regardless of the relief that they are seeking. Highlighting this fact is a very recent case from the Northern District of Ohio, Kearney v. University of Akron. There, the plaintiff was requesting reversal of findings of plagiarism, correcting of her academic record, and issuing her a Juris Doctorate degree. The court held that such relief was barred by the 11th Amendment because, quote, the alleged violations of law are not threatened or ongoing. The same is the case here, Your Honors. There's no request for either of these plaintiffs to be reinstated to the University of Cincinnati. In fact, as Your Honors have recognized, John Doe II is a graduate of the University of Cincinnati. John Doe I is enrolled at a separate educational institution. There's no request in the complaint for any reinstatement to the University of Cincinnati. But the argument goes that there is a threatened diminishment of his prospects, his professional prospects. Does that mean? That would not. I mean, that's arguably how I guess you could say that that's how they get to prospective. That would not avoid the 11th Amendment issue in this case, Your Honor. You could liken it to a public employment situation. If someone was fired from public employment, the mere fact that they have a diminishment of their potential job prospects isn't a continuing violation of federal law that injunctive relief would meet, such that you could use the ex parte young doctoring to get past the 11th Amendment issue. Nonetheless, Your Honors, we submit that the district court's dismissal of both counts 1 and 2 of plaintiff's complaint should be affirmed as the district court correctly held that plaintiffs failed to state due process claims upon which relief can be granted. Plaintiff's lead argument in their appeal brief was to assert that the district court erred by not applying the Matthews v. Eldredge factors that the Supreme Court set forth nearly 40 years ago. Ironically, plaintiffs engage in the exact same thing that they claim the district court erred doing in their brief. That is, focusing on the specific elements of the due process claim and the university's disciplinary process. District court stated on this... May I interrupt you, counsel? What's your point there? Ironically, they must commit the same sin. Correct. Explain how you say that. In their brief, they lament that the district court didn't take a holistic approach and instead took an atomistic approach. I understand that to mean that they shouldn't have focused in on each of these due process protections. Rather, they should look at it as a whole and craft some specific level of due process or determine what level of due process. We submit that that's exactly what the district court did in this case. However, they are upset that the district court addressed those each individually, but then they do the exact same thing in their brief. Frankly, I think it would be nearly impossible for a court to not do that when reviewing a due process situation. You have to take the context that the case is brought in and then examine each individual protections that either were or were not provided. The district court stated on this point, if the case law shows that plaintiffs were not entitled to various procedural protections on an individual basis, and it does, then it follows that plaintiffs were not denied due process because UC did not utilize some vague admixture of the missing procedures during their hearings. Plaintiffs' only response to this statement is in footnote 8 of their brief where they say, quote, this is true only if UC wishes to push the envelope and provide only the minimal process that is due. Your Honors, that's all that the law requires is that entities provide the minimal process that is due. Anything that would be an entity striving to go above and beyond that would be merely an advisory opinion. Can I shift gears just a minute and ask you about the bias claim? As best I can tell, that's largely based on the fact that the university gave certain protections to alleged victims from the time they claimed to be victims while imposed certain restrictions on the students who were accused of sexual misconduct, limitations on where they could go on campus, that sort of thing. I don't read, I don't understand the arguments to be that any of the decision makers personally exhibited bias. My understanding is that those protections and restrictions are federally required, is that right? That's correct, Your Honor. In the regulations submitted by the Department of Education through the Violence Against Women Act, and specifically the regulation is 34 CFR section 668.46, sub B11, sub remuneral 5. So that kind of gives, arguably it kind of does give the wrong impression, although I can certainly understand the policy basis for it. But it doesn't go to the issue of whether the university or any of the decision makers displayed a personal bias toward these plaintiffs. That's correct, Your Honor. I mean ultimately the accommodations that were afforded to the individuals in this situation and that are required to be afforded to individuals in this situation pursuant to federal law doesn't ultimately affect the outcome of the actual disciplinary proceedings. That is stuff that happens before the disciplinary proceedings. You can understand if you're the person who's been accused of sexual misconduct, how that just might leave you with a bad taste in your mouth. But I'm sure that the Department of Education has some very good policy reasons and I'm sure it comes out of an environment in which universities were thought to provide inadequate accommodation to alleged victims. So I mean you can understand the reasons, but you can also sort of understand why it doesn't go down too well with somebody who's accused of misconduct. Sure, Judge. I can absolutely understand why that person would feel that initially, that there may be something that they were separated somewhere when the initial allegation was made. But I think the reason why the Department of Education issued these regulations is to make sure that these individuals, that universities and educational institutions are taking immediate action to make sure that there isn't a situation where these individuals are coming into contact with each other until these disciplinary proceedings are ultimately completed. There are additional allegations of bias that I would like to address that are made by plaintiffs in their briefings. Specifically, plaintiffs allege that Defendant Dan Cummins was biased because he served multiple roles within the disciplinary process. In this court's case of Hain v. Metro Nashville Public Schools, the court said, the impartiality demanded by due process does not preclude many common school disciplinary practices. For example, when a school official who initiates, investigates, or prosecutes charges against a student ultimately plays a role in the decision to suspend that student. So in Hain, Your Honors, this court held that it's not a due process violation for someone in school administration to be involved both in the investigation and the ultimate adjudication of that discipline. That's not even what's alleged against Mr. Cummins in this case. What they allege, they allege that it shows bias because he was involved in investigating the matter and then he was also involved in ensuring that these complaining students were afforded the academic accommodations that the universities required to provide. So Cummins was not a decision maker at the Board of Inquiry type proceedings? That's correct, Your Honor. As Your Honor said, Mr. Cummins was not a member of the disciplinary panel, so he was not ultimately responsible for finding that either plaintiff had violated the University of Cincinnati Code of Conduct. But the briefing suggests he played a very instrumental role in the setup and the bias seems to come through him, at least in my reading of the argument. That does seem to be a central allegation in plaintiff's briefing, Your Honor. One of the other specific allegations made against Mr. Cummins was that bias can be seen because he left a witness statement out of the investigation report that he authored regarding the situation with John Doe 1. However, as the district court noted, both that evidence and a number of other pieces of evidence that were not introduced at the first hearing were ultimately introduced at the second hearing. So if there was any potential violation, it's, as the district court termed it, harmless in this case because there's no causal relationship between any failures by Mr. Cummins. I'm sorry, Your Honor. Between the first and the second, the results, the arguments about the first hearing go away. That's correct, Your Honor. I don't understand this procedure to restrict the evidence that the accused could offer. Is my understanding correct? There was some restriction, but I think it wasn't more of a restriction in the first case. One of the specific issues was that there were University of Cincinnati police officers that were not ordered to be present at the first disciplinary hearing. I'm not really understanding the—I didn't really understand the plaintiffs to be arguing about restrictions on their ability to present evidence except through cross-examination, but the lax evidentiary rules would probably mean I would think that everything could come in some other way, but that's not the case you're telling me? With regard to cross-examination and questioning— I understand how the cross-examination works. I'm trying to look at the overall evidence that's before the board, although I don't even understand that to necessarily be the thrust of the plaintiff's complaint.  And I think that the reason for that, Your Honor, is because ultimately in the second hearings, they were permitted to present the evidence that they wanted to present to the ARC hearing panel. So there was no issue in the second hearings ultimately that led us to where we are today. There may have been an issue with that with the first hearings, but without knowing the exact thought process by the individuals who reversed those hearings, it's very likely that that was the reason why they ultimately reversed and allowed them to have second hearings. With regard to the cross-examination issue, Your Honors, this court in 2014 in C.Y. X. Rel. Antone v. Lakeview Public Schools, and nearly 30 years ago in Newsom v. Batavia Local School District, both of those cases involved high school students that were expelled from their institutions. In both those cases, this court held that cross-examination is not a due process requirement. In fact, in Newsom, this court stated, quote, So nearly 30 years ago, this court state applied the Matthews v. Eldridge factors and held that cross-examination in school disciplinary situations is not a due process requirement. With regard to the burden of proof, as Judge Gibbons noted, in the district court found, this is a Board of Inquiry situation. This is not a situation where there's a burden of proof that is shifted to one party or the other. It's the Board of Inquiry that then examines the evidence that's put forth before it and decides, based upon a preponderance of the evidence, whether or not this student violated the Code of Conduct. Nonetheless, even if there was a burden of proof issue, even if the burden of proof was shifted to the plaintiffs in this matter, it's not a due process violation. Supreme Court in Levine v. Milne stated, that the locus of burden of persuasion is normally not an issue of federal constitutional moment. In our briefing, we identified a number of public employment cases where those circuits and those district courts followed Levine and held that it was not a due process violation to shift the burden of proof onto that employee in an employment disciplinary situation. Briefly, Your Honor, let's address the qualified immunity issues that were addressed by the district court. Plaintiff's only argument on this point is to assert generally that the Sixth Circuit law clearly establishes that plaintiffs were not entitled to due process in their disciplinary hearings held at UC. That's not in dispute here. What plaintiffs failed to address, however, is the fact that these specific protections that they're now asking this court to identify as required due process protections were not clearly established. The only thing that could have been said to have been clearly established is what this court said in Ashigbu v. Williams in 1997. Before expelling a student for disciplinary reasons, a public institution must provide one, a notice of the charges against the student, two, an explanation of the evidence that authorities have against the student, and three, an opportunity for the student to present his side of the story. Plaintiffs admit on page 16 of their opening brief that they were provided these three things in their disciplinary hearings at the University of Cincinnati. Your Honor, if we submit the district court correctly held that the individual defendants were entitled to qualified immunity. I see that my time is running out, but I would just like to briefly address the Title IX claims that were brought in this issue. I think you're done. I think your time is up, unless either of my colleagues has questions for you. Your time isn't quite up. You have 30 seconds or so. I'll take the court's note, and I will rest. Thank you, Your Honor. All right. Your rebuttal, Mr. Engel. Thank you, Your Honor. Your Honor, I want to focus first on a question Judge Gibbons was asked about whether the bias in this case was personal. And I'd suggest a complaint doesn't need to show personal bias on behalf of any one particular person, but on a 12B6 standard, it's sufficient for us to survive the motion to dismiss if there was evidence in the complaint of which the court could infer that there was bias within the system. Here's what I mean by that. Systemically biased as opposed to individually biased. That's right. And so what is the evidence in the complaint that makes it more than just a conclusory allegation? And remember, it doesn't have to be the most reasonable or even the most plausible inference. Just a reasonable inference. Let me focus in on one thing that happened in this case that was discussed by counsel. Daniel Cummins does an investigation in this matter on the John Doe 1 case. He goes out and he interviews certain witnesses. He prepares a written report. That report is given to the hearing panel before they make their decision or before they even show up for the hearing. So they can read it. It's got University of Cincinnati stamp on it. It's got the imprinter of authority behind it. It's given to the panel in the first hearing. It's given to the panel in the second hearing. He is provided information in the course of his investigation that is helpful to the accused student. He does not include that information in his report. Now, could you infer from that what counsel suggested, that maybe he just was gathering some information and that later all the information would come out at the hearing panel? Yeah, you could infer that. However, you could also infer that he's picking and choosing evidence. Did anybody ever ask Cummins or Dry's Attention Counsel, you know, for the accused, ever say, gee, did they get this other stuff that helped my client? Here is what I do know, Your Honor, which is that in between the first hearing and the second hearing, Daniel Cummins was aware that he had not included information helpful to the accused student in his report. He did not amend his report or add that information to his report or go out and do any further investigation before. Two things, I'm asking you, did anybody draw his attention to that before the 12B6 or as part of your argument with respect to the 12B6 motion? That's the first question. What's the answer? I'm not sure I understand. Did anybody talk to him about it and say, what about the stuff that helped my client? You've left out some stuff. It was the only way, and I don't think I'm dodging the question, Your Honor. The only way I can answer that is to say that it was clearly brought up because between the first and the second hearing, John Doe 1 filed his original lawsuit, and as part of that lawsuit, it was alleged he didn't include the information. So that's the best evidence I can point to to say he was. Was it also brought to the district court's attention? Yes, Your Honor. Yes, Your Honor. Yes. All right. I see I'm out of time. Are there further questions? No. We appreciate the argument both of you have given, and we'll consider the case carefully. Thank you, Your Honor.